IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LIBERTY MUTUAL PERSONAL**                                        **PLAINTIFFS**
**INSURANCE COMPANY and**
**LIBERTY MUTUAL INSURANCE**
**COMPANY**

**V.**                                                                           **NO. 4:23-CV-194-DMB-JMV**

**FRANKLIN WINTERS and**
**DORIS HILL**                                                              **DEFENDANTS**

**OPINION AND ORDER**

Franklin Winters ran over Doris Hill with his Ford F-150 truck in a casino parking lot after quarreling with her in the casino. Arguing that their respective insurance policies issued to Winters do not cover Hill's bodily injuries and that they have no obligation to defend or indemnify Winters against claims by Hill, Liberty Mutual Personal Insurance Company and Liberty Mutual Insurance Company each move for summary judgment. Because coverage for Winters' criminal and intentional acts is excluded under the policies and uninsured motorist coverage is not available, both summary judgment motions will be granted.

**I**
**Procedural History**

On October 19, 2023, Liberty Mutual Personal Insurance Company ("LMPIC") and Liberty Mutual Insurance Company ("LMIC") filed a "Complaint for Declaratory Judgment" in the United States District Court for the Northern District of Mississippi "seeking a judicial adjudication of their respective rights, duties and obligations to provide certain coverages under an Auto Policy issued by LMPIC and a Personal Liability Policy issued by LMIC, arising from acts by Franklin Winters that resulted in alleged bodily injury to Doris Hill." Doc. #1 at 1. In their

November 15, 2023, answer to the complaint, Winters and Hill asserted counterclaims for breach of contract, bad faith, negligence and/or gross negligence, race discrimination, and punitive damages. Doc. #8 at PageID 105–07. On May 31, 2024, the Court granted LMPIC and LMIC's motion to dismiss the counterclaims for failure to state a claim upon which relief can be granted.[1] Doc. #77.

On September 20, 2024, LMPIC and LMIC each filed a motion for summary judgment. Docs. #93, #96. On October 21, 2024, the Court struck Winters and Hill's combined response to the summary judgment motions as untimely and because they failed to refile their response and memorandum brief as directed by the Clerk of the Court to comply with Local Rule 7(b)(2). Doc. #102. On January 13, 2025, the Court denied Winters and Hill's motion for leave to refile their response and memorandum brief due to their failure to demonstrate excusable neglect[2] for their untimely summary judgment response.[3] Doc. #111.

On February 10, 2025, LMPIC and LMIC filed a consolidated motion in limine.[4] Doc. #119. Neither Winters nor Hill responded to the motion in limine.

## II
## Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is

---

[1] The Court dismissed the counterclaims without prejudice, giving Winters and Hill fourteen days to seek leave to file amended counterclaims, Doc. #77 at 13, but they never requested such leave.

[2] The Court earlier warned the defendants a showing of excusable neglect was required. Doc. #102 at 2 n.1.

[3] On January 22, 2025, United States Magistrate Judge Jane M. Virden allowed the attorney both defendants shared to withdraw as Hill's counsel only, after which Hill elected to proceed pro se. Docs. #116, #118.

[4] On March 11, 2025, Judge Virden allowed Winters' counsel to withdraw, after which Winters elected to proceed pro se. Docs. #130, #133.

2

entitled to judgment as a matter of law." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Nall v. BNSF Railway Co.*, 917 F.3d 335, 340 (5th Cir. 2019). In reviewing summary judgment evidence, a court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Id.*

## III
## Factual Background

### A. The Policies

### 1. Auto Policy

On May 2, 2022, LMPIC issued "LibertyGuard Auto Policy" ("Auto Policy") to Winters as the named insured with a coverage period through May 2, 2023, for four vehicles, including a 2008 Ford F-150. Doc. #93-11 at PageID 751. Relevant here, the Auto Policy provides:

> **PART A – LIABILITY COVERAGE**
>
> **INSURING AGREEMENT**
>
> **A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. ….
>
> …
>
> **EXCLUSIONS**
>
> **A.** We do not provide Liability Coverage for any "insured":
>     1. Who intentionally causes "bodily injury" or "property damage".
>
> …
>
> **PART A – LIABILITY COVERAGE**
>
> Part **A** is amended as follows:
>
> …
>
> **D.** The following exclusions are added to item **A.**:
>     10. For "bodily injury" or "property damage" arising out of a criminal act or omission of an "insured". This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. However, this exclusion **(10.)** does not apply to traffic violations.
>
> …

3

> **UNINSURED MOTORISTS COVERAGE – MISSISSIPPI**
>
> **I. PART C. - UNINSURED MOTORISTS COVERAGE**
>
> …
>
> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:
>
> 1. "Bodily injury" sustained by an "insured" and caused by an accident; ….
>
> …
>
> B. "Insured" as used in this endorsement means:
>
> …
>
> 2. Any other person "occupying":
>   a. "Your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission; ….

*Id.* at PageID 763–64, 775, 787 (emphases in original).

### 2. Personal Liability Policy

On May 3, 2022, LMIC issued "LibertyGuard Personal Liability Protection Policy" ("Personal Liability Policy") to Winters as the named insured with a coverage period through May 3, 2023. Doc. #96-11 at PageID 1005. The Personal Liability Policy provides personal excess liability coverage and "excludes losses arising from criminal acts, intentional acts, or from the use of a motor vehicle unless liability is covered by [the Auto Policy]." Doc. #97 at 17. The relevant provisions of the Personal Liability Policy are:

> A. This policy does not apply to **bodily injury**, **personal injury**, or **property damage:**
>
> 1. which is either expected or intended by any **insured** even if the resulting **bodily injury**, **personal injury**, or **property damage**:
>
>   a. is of a different kind, quality, or degree than initially expected or intended; ….
>
> 2. arising out of any violation of criminal law committed by, or with the knowledge or consent of any **insured**, except those violations of a motor vehicle law. This exclusion applies whether or not any **insured** is charged or convicted of a violation of criminal law, or local or municipal ordinance.

4

>   …
>
>   9. arising out of the ownership, maintenance, use, loading, or unloading of a **motor vehicle**, … owned by any **insured**, unless the liability is covered by an **underlying policy** or by other valid and collectible insurance.
>   …
>
>   22. for Uninsured Motorists, Underinsured Motorists, or any other coverage unless these coverages are specifically listed in your Personal Liability Protection Policy Declarations

Doc. #96-11 at PageID 1015, 1017 (emphases in original).

### B. The "Underlying Incident"[5]

On November 8, 2022, Winters and Hill went to Harlow's Casino in Winters' 2008 Ford F-150 pickup truck, with Winters driving and Hill riding as a passenger. Doc. #93-3 at 17; Doc. #93-4 at 22; Doc. #96-3 at 17; Doc. #96-4 at 22. Inside the casino, Winters and Hill had an "argument" or "disagreement." Doc. #93-3 at 20; Doc. #93-4 at 25; Doc. #96-3 at 20; Doc. #96-4 at 25. After exchanging words, Winters pushed Hill and, in response, Hill threw coins at Winters. Doc. #93-3 at 22–24; Doc. #93-4 at 28, 71; Doc. #96-3 at 22–24; Doc. #96-4 at 28, 71. During the argument, Hill asked Winters for the keys to the truck but Winters refused. Doc. #93-3 at 26; Doc. #93-4 at 28; Doc. #96-3 at 26; Doc. #96-4 at 28. Winters told Hill that he did not want her in his truck and that she could not ride from the casino with him. Doc. #93-3 at 26; Doc. #93-4 at 30; Doc. #96-3 at 26; Doc. #96-4 at 30. The casino's security staff instructed Winters and Hill to leave the casino. Doc. #93-3 at 24; Doc. #93-4 at 30; Doc. #96-3 at 24; Doc. #96-4 at 30.

Winters walked to his truck in the casino parking lot and Hill walked behind him. Doc. #93-3 at 29; Doc. #93-4 at 30, 34; Doc. #96-3 at 29; Doc. #96-4 at 30, 34. Winters got into his truck and while he backed it up, Hill walked behind the truck and stood there. Doc. #93-3 at 34,

---

[5] The same facts regarding the incident at issue are presented in both summary judgment motions.

5

39; Doc. #93-4 at 39, 40; Doc. #96-3 at 34, 39; Doc. #96-4 at 39, 40. Hill then walked around to the truck's front passenger door. Doc. #93-4 at 45–46; Doc. #96-4 at 45–46. According to Winters, he realized Hill was near his truck when he heard her hit the passenger side windshield and, assuming Hill moved out of the way, backed up the truck. Doc. #93-3 at 38; Doc. #93-5 at 65; Doc. #96-3 at 38; Doc. #96-5 at 65. Winters hit Hill with his truck and then left the casino parking lot. Doc. #93-1 at PageID 572; Doc. #96-1 at PageID 826. Winters claims he "saw no one" by his truck and was "absolutely certain" Hill was not by his truck when he drove it forward and off the casino premises. Doc. #93-5 at 68, 69; Doc. #96-5 at 68, 69.

Debra Kirk, who was in the casino's parking lot at the time, saw Hill hanging on the front passenger side of Winters' truck, the truck "[take] off" and "run over" Hill, and the truck leave. Doc. #93-8; Doc. #96-8.

The interactions between Winters and Hill in the casino, and in the parking lot after they left the casino, were captured by the casino's security cameras.[6] The video footage from inside the casino shows Winters and Hill sitting in front of a row of casino machines with an empty chair between them,[7] with Winters focused on the machine before him and Hill focused on the phone in her hands; about two and a half minutes later, them begin to turn back and forth towards one another, gesturing or pointing at each other in a seemingly aggressive or dismissive manner; Hill stand and move closer to Winters while his back is somewhat turned away from her; Winters stand up slightly while turning towards Hill and use both of his hands to forcefully shove Hill, causing

---

[6] Both LMPIC and LMIC made the videos exhibits to their respective summary judgment motions. Docs. #93-7, #93-9, #96-7, #96-9. "When there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video." *Crane v. City of Arlington*, No. 21-10644, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022). The video evidence here generally does not contradict Winters' and Hill's accounts of the incident.

[7] In the video, Winters (wearing a red shirt) and Hill (wearing a patterned shirt and gray cap) appear on the right side of the frame.

6

her to stumble over the empty chair and fall to the floor; Winters in his chair pointing his finger down at Hill right after she hit the floor; other casino patrons flock to Hill on the floor, appearing to check if she was okay, while Winters remains slightly turned away from Hill; Hill stand and throw something towards Winters after which Winters stands and throws his arm up towards Winters as if he was going to hit her; security personnel arrive and speak primarily with Hill, who appears to tell them what happened, while Winters sits with his back to them; Hill walk away and return continuing to speak with security personnel; and Winters, after a brief interaction with security personnel, stand and walk away from them out of the frame while security personnel escort Hill in the same direction on the other side of the machines. Docs. #93-7, #96-7.

The video footage recorded outside the casino shows Winters walking to his truck, eventually followed by Hill walking at a distance in the same direction; Winters get in the truck and start it as Hill continues to walk closer to the rear driver's side of the truck; Winters back up the truck and then abruptly stop as Hill walks directly behind the truck; Hill walk towards the truck's front passenger side; Winters continuing to back up the truck as Hill reaches the truck's front passenger side; Winters drive the truck forward towards the point where Hill is standing or close to approaching the truck's passenger side's front corner; Hill being hit by the truck, falling and disappearing from view under the truck as Winters continues to drive forward; Winters driving over and past the area where Hill's body fell; and Hill's body revealed lying in the parking lot after the truck passed completely over her. Docs. #93-9, #96-9.

The day of the incident, Hill filed charges against Winters. Doc. #93-2 at 3; Doc. #96-2 at 3. Winters was arrested and charged with the crime of aggravated assault.[8] Doc. #93-1 at 3; Doc. #96-1 at 3.

---

[8] There is nothing in the record indicating the criminal charges against Winters were dismissed.

7

IV
**Analysis**

In its summary judgment motion, LMPIC submits that "[t]here exists no genuine issue of material fact that the Underlying Incident was a crime and an intentional act, and there is no liability coverage under the [Auto] Policy which would be applicable to the criminal and intentional actions of Winters which resulted in bodily injury to Hill." Doc. #93 at 2.

Similarly, LMIC submits that it is entitled to summary judgment because "[t]here exists no genuine issue of material fact that the Underlying Incident was a crime and an intentional act, that it resulted from the use of a motor vehicle for which there is no underlying coverage, and that the policy has no UM coverage. Therefore, the Personal Liability Policy provides no coverage which would be applicable to the Underlying Incident." Doc. #96 at 2.

### A. LMPIC's Motion for Summary Judgment

LMPIC argues that "[t]he Auto Policy does not provide liability coverage for criminal acts and their consequences;" "[t]he Auto Policy contains a second exclusion which expressly excludes intentional acts;" and while "[t]here has been no 'accident' to trigger UM coverage under the terms of the Auto Policy's UM Endorsement," "should the Court find that UM coverage is triggered," "Hill is limited to the $250,000/per person UM coverage available on the truck involved in the assault." Doc. #94 at 9, 12, 16, 19.

#### 1. Criminal acts exclusion

LMPIC asserts that "Hill's claim for benefits under the Auto Policy arises from Winters' act of running her over with his truck [and i]t is undisputed that Winters was arrested and charged with aggravated assault as a result of running over Hill." Doc. #94 at 11. It also submits that "the exclusion applies even if there is no conviction." *Id.* at 12.

8

Under Mississippi law,[9] an insurance policy is a contract. *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 688 (5th Cir. 2014). An insurance contract that is plain and unambiguous will be enforced as written. *Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 253 (Miss. Ct. App. 2006). An insurance contract is ambiguous when its language is susceptible of two or more reasonable interpretations. *Id.*

The clear and unambiguous language of the Auto Policy's criminal acts provision specifies that the Auto Policy does not provide coverage for bodily injury arising out a criminal act or omission by Winters, regardless of whether he "is actually charged, with or convicted of, a crime." Doc. #93-11 at PageID 775. Because Winters was charged with the crime of aggravated assault based on him running over Hill with his truck at the casino, the criminal acts exclusion clause bars liability coverage. *See Alfa Ins. Corp. v. Walden*, No. 96-60700, 1997 WL 335825, at *2–3 (5th Cir. May 28, 1997) (criminal acts exclusion clause triggered where "language of the exclusion indicates that it is only applicable when (1) a covered person uses the car in connection with the commission of or an attempt to commit a crime, and (2) liability arises out of such use of the car …. Jones, a covered person, admitted that at the time of the accident, he was under the influence of 'crack' cocaine and was fleeing the scene of a burglary in which he had participated."); *see also Lambert v. Safeco Ins. Co. of Am.*, 87 So. 3d 1123, 1128 (Miss. Ct. App. 2012) ("[W]e affirm the circuit judge's finding that Brian's death was caused by an illegal act committed by Ellis, and, under the illegal-acts exclusion in the Safeco policy, Safeco does not owe liability insurance coverage to Ellis.").

---

[9] Because this case is based on diversity jurisdiction, Mississippi substantive law applies. *See Wisznia Co., Inc. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) ("A federal court sitting in diversity applies the substantive law of the forum state."). There appears to be no choice-of-law provision in either policy.

**2. Intentional acts exclusion**

LMPIC argues that "[i]n addition to being a criminal act, the vehicular assault upon Hill was a non-accidental, intentional act by Winters for which liability coverage is not available" because the Auto Policy excludes coverage for any insured "[w]ho intentionally causes 'bodily injury' or 'property damage'" and "Winters intentionally operated his truck in an unsafe manner where harm to Hill was foreseeable." Doc. #94 at 13, 15.

While the Auto Policy clearly and unambiguously explains that LMPIC "will pay damages for 'bodily injury' … for which any insured becomes legally responsible because of an auto accident," it does not define the term "accident."[10] Consequently, the Court will use the plain meaning of the word "accident." *See Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004) ("[I]n such instances where the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning."). The Merriam-Webster dictionary defines "accident" as "an unforeseen and unplanned event or circumstance."[11] "What the dictionaries suggest, legal authorities confirm." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 115 (2019). Indeed, Mississippi case law has defined "accident" as "a sudden event that is not planned or intended and that causes damage or injury." *Miss. Farm Bureau Cas. Ins. Co. v. Powell*, 336 So. 3d 1079, 1087 (Miss. 2022). So, for the intentional acts exclusion to apply here, Hill's bodily injuries must not be attributed to an unplanned or unintended event involving Winters' truck for which Winters would be legally responsible.

---

[10] For purposes of LMPIC's summary judgment motion, there can be no question that the "auto" referenced includes Winter's Ford F-150. Doc. #93-11 at PageID 757.

[11] *Accident*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/accident (last visited June 25, 2025).

Mississippi law requires a court to "look[] to the actions of the insured, not the resulting damages, to decide whether there was an accident." *Nat'l Builders and Contractors Ins. Co. v. Slocum Constr., L.L.C.*, 428 Fed. App'x 430, 432 (5th Cir. 2011). "The motivation behind those actions is irrelevant if the insured intended to act." *Id.*

Winters denies that he intentionally hit and ran over Hill with his truck. Doc. #93-1 at 2. However, because Winters intended to operate his truck while aware Hill was very close to it[12] soon after arguing with Hill during which he shoved her to the floor—regardless of whether he intended to cause Hill's injuries—the incident cannot be deemed an accident for purposes of the intentional acts exclusion clause. *See, e.g., Gold Coast Commodities, Inc. v. Crum & Forster Specialty Ins. Co.*, 68 F.4th 963, 968–69 (5th Cir. 2023) ("Even if [Gold Coast] didn't intend the consequences, Gold Coast's alleged underlying conduct was done deliberately. The resulting damage to the sewer's infrastructure is simply the unintended result of [Gold Coast's] intentional actions.") (internal quotations marks omitted; alteration in original); *Cap. City Ins. Co. v. Hurst*, 632 F.3d 898, 905 (5th Cir. 2011) (affirming summary judgment for insurer in declaratory judgment action under Mississippi law where "the Policy provides coverage for bodily injury caused by an 'accident' and expressly excludes coverage for bodily injury 'expected or intended from the standpoint of the insured.' Under any reading of the Policy, Bell's manslaughter conviction negates any finding that Hurst's death was an 'accident.'");[13] *Nat'l Builders*, 428 Fed. App'x at 432 ("Slocum intended to build a house on the land that Anderson staked out. It may not have intended to build one on property that did not belong to Anderson, but that is the unintended

---

[12] *See* Doc. #93-3 at 30 ("I was in the truck. I had cranked the truck …."); *id.* at 39 ("I gave her ample time to move …. That's when I backed up assuming she was out of the way.").

[13] In *Capital City*, Hurst "was killed … when he was thrown from his vehicle after it collided with Darral Bell's vehicle. Minutes before the collision, Hurst and Bell had an altercation at an acquaintance's house during which Hurst slapped and threatened Bell." 632 F.3d at 900.

result of its intentional actions. Therefore, its actions were not an accident under the terms of its policy, and NBCI has no duty to defend or indemnify."); *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 71 (affirming denial of coverage under intentional acts exclusion clause for unintentional bodily injury caused by intentionally starting property fire); *Lambert*, 87 So. 3d at 1128 (affirming application of intentional acts exclusion where insured's intent to discharge firearm resulted in unintended death of victim); *see also Thomas v. State Farm Fire and Cas. Co.*, 856 So. 2d 646, 650 (Miss. Ct. App. 2003) (affirming intentional acts exclusion bar where homeowner intentionally shot by cousin); *Nationwide Mut. Fire Ins. Co. v. Mitchell ex rel. Seymour*, 911 F. Supp. 230, 235 (S.D. Miss. 1995) (granting summary judgment to insurer where insured's intentional blow to victim produced unintended injuries). The intentional acts exclusion applies to preclude coverage here too.

### 3. Uninsured Motorist Coverage

LMPIC argues "[t]here has been no 'accident' to trigger UM coverage" but "should the Court find that UM coverage is triggered," coverage is limited to $250,000. Doc. #94 at 16, 19.

The Uninsured Motorist clause of the Auto Policy provides that LMPIC "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of … '[b]odily injury' sustained by an 'insured' and caused by an accident …." Doc. #93-11 at PageID 787. For purposes of this provision, LMPIC concedes that "assuming UM coverage applies, Hill qualifies as a UM insured as a permissive guest passenger 'occupying' Winters' vehicle." Doc. #94 at 17. But because the Court concluded above that Winters' conduct does not constitute an accident and because application of the Uninsured Motorist provision applies to damages an insured is legally entitled to recover due to

bodily injury caused by an accident, the Uninsured Motorist clause is not triggered so as to provide coverage for Hill's damages.

### B. LMIC's Motion for Summary Judgment

LMIC argues that excess liability coverage under the Personal Liability Policy is barred by its criminal acts exclusion, its intentional acts exclusion, and its motor vehicle exclusion; and that the Personal Liability Policy does not include uninsured motorist coverage. Doc. #97 at 8–17.

#### 1. Criminal acts exclusion

LMIC argues that "Hill's claim for benefits under the Personal Liability Policy arises from Winters' act of running over her with his truck;" "[i]t is undisputed that Winters was arrested and charged with aggravated assault as a result of running over Hill with his truck;" and "[t]he [criminal acts] exclusion applies even if there is no conviction." Doc. #97 at 10, 11.

The criminal acts exclusion clause of the Personal Liability Policy provides that coverage does not extend to bodily injury arising out of any violation of criminal law committed by Winters, regardless of whether he is charged with or convicted for such violation. Doc. #96-11 at PageID 1015. The facts underlying LMIC's argument that the Personal Liability Policy's criminal acts exclusion bars liability coverage are identical to those supporting LMPIC's argument that the Auto Policy's criminal acts exclusion applies to bar coverage. Given this, the Court adopts its analysis above to conclude that the criminal acts exclusion of the Personal Liability Policy bars coverage.

#### 2. Intentional acts exclusion

LMIC asserts that "the vehicular assault upon Hill was a non-accidental, intentional act by Winters for which excess liability coverage is not available." Doc. #97 at 12.

The intentional acts exclusion of the Personal Liability Policy provides that coverage is not extended to bodily injury which is either expected or intended by Winters even if the bodily injury

13

is of a different kind or degree than he initially expected or intended. Doc. #96-11 at PageID 1015. For the same reasons the Auto Policy's intentional acts exclusion bars coverage, the Personal Liability Policy's intentional acts exclusion does not provide coverage either since it "does not apply to bodily injury, personal injury, or property damage … which is expected or intended by any insured even if [such] is of a different kind, quality, or degree than initially expected or intended." Doc. #96-11 at PageID 1015 (emphases omitted).

### 3. Motor vehicle exclusion

LMIC argues the motor vehicle exclusion "plainly states that losses arising from the use of a motor vehicle are not covered by the Personal Liability Policy unless liability is covered by an underlying policy;" "Winters' Auto Policy is an underlying policy, as shown in the Personal Liability Policy Declarations;" and "liability is not covered by the Auto Policy or by any other valid and collectible insurance." Doc. #97 at 15, 16.

The Court agrees. The motor vehicle exclusion states coverage is unavailable for bodily injury arising out of the use of a vehicle owned by Winters unless the vehicle is covered by an underlying policy. Doc. #96-11 at PageID 1015. Because the Court concluded above that no coverage extends under the underlying Auto Policy, the motor vehicle exclusion applies to preclude coverage under the Personal Liability Policy.

### 4. Uninsured motorist coverage

An express exclusion in the Personal Liability Policy provides that it does not apply to bodily injury "for Uninsured Motorists, Underinsured Motorists, or any other coverage unless these coverages are specially listed in your Personal Liability Protection Policy Declarations." Doc. #96-11 at PageID 1017. Because the Policy Declarations do not list coverage for uninsured

14

motorists, *see id.* at PageID 1005–08, no uninsured motorist coverage can be sought under the Personal Liability Policy.

## V
## Conclusion

The motions for summary judgment [93][96] are **GRANTED**. LMPIC has no obligation to provide coverage to Hill under the Auto Policy, and has no duty to defend or indemnify Winters for any claims or lawsuits against him by Hill arising from the Underlying Incident; and LMIC has no obligation to provide excess liability benefits to Hill, and has no duty to defend or indemnify Winters for any claims or lawsuit brought against him by Hill arising from the Underlying Incident. The pending motion in limine [119] is **DENIED as moot**. A final judgment will be issued.

**SO ORDERED**, this 30th day of June, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**