**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**LIBERTY MUTUAL PERSONAL**                      **PLAINTIFFS**
**INSURANCE COMPANY and**
**LIBERTY MUTUAL INSURANCE**
**COMPANY**

**V.**                                     **NO. 4:23-CV-194-DMB-JMV**

**FRANKLIN WINTERS and**
**DORIS HILL**                                 **DEFENDANTS**

## <u>ORDER</u>

Doris Hill moves to vacate the judgment resulting from the Court's summary judgment ruling in favor of Liberty Mutual Personal Insurance Company and Liberty Mutual Insurance Company, and the insurers move to strike Hill's reply in support of her motion to vacate or, in the alternative, to file a surreply. For the reasons below, Hill's motion to vacate will be denied and the insurers' motion to strike will be denied.

**I**
**<u>Relevant Procedural History</u>**

On October 19, 2023, Liberty Mutual Personal Insurance Company ("LMPIC") and Liberty Mutual Insurance Company ("LMIC") filed a "Complaint for Declaratory Judgment" in the United States District Court for the Northern District of Mississippi, seeking "a judicial adjudication of their respective rights, duties and obligations to provide certain coverages under an Auto Policy issued by LMPIC and a Personal Liability Policy issued by LMIC, arising from acts by Franklin Winters that resulted in alleged bodily injury to Doris Hill." Doc. #1. On November 15, 2023, Ashley Harris-Turner noticed her appearance as counsel of record for both Winters and Hill. Doc. #7.

On September 20, 2024, LMPIC and LMIC each filed a motion for summary judgment. Docs. #93, #96. Winters and Hill filed a combined response and memorandum brief[1] to the summary judgment motions on October 11, 2024, which the Court struck the next day as untimely and for failure to comply with Local Rule procedural requirements. Doc. #102. On January 13, 2025, the Court denied Winters and Hill's October 23, 2024, motion for leave to refile their response and memorandum brief due to their failure to demonstrate excusable neglect for their untimely summary judgment response.[2] Doc. #111.

On January 22, 2025, United States Magistrate Judge Jane M. Virden allowed Harris-Turner to withdraw only as Hill's counsel, after which Hill elected to proceed pro se. Docs. #116, #118.

LMPIC and LMIC filed a consolidated motion in limine on February 10, 2025, to which neither Hill nor Winters responded.[3] Doc. #119. On June 30, 2025, the Court granted summary judgment in favor of LMPIC and LMIC, denied the motion in limine as moot, and entered a final judgment accordingly. Docs. #136, #137.

Nearly a month later, on July 28, Hill filed a motion to vacate the judgment, withdraw the "Opinion and Order" granting summary judgment, and reopen discovery.[4] Doc. #144. LMPIC and LMIC responded in opposition on August 21, Doc. #149; and Hill replied on September 7, Doc. #155.[5] On September 12, LMPIC and LMIC moved to strike Hill's reply in support of her

---

[1] Docs. #99, #100.

[2] The Court earlier warned the defendants a showing of excusable neglect was required. Doc. #102 at 2 n.1.

[3] On March 11, Judge Virden allowed Harris-Turner to withdraw as Winters' counsel, after which Winters elected to proceed pro se. Docs. #130, #133.

[4] "Hill submits this Motion through her independent counsel and not on behalf of … Winters. However, … Hill respectfully submits that, should this Motion be granted, similar relief would be appropriate as to … Winters in light of the parallel manifest injustices he has likewise suffered in this proceeding." Doc. #144 at 1 n.1.

[5] The Court granted extensions of time to file both the response and the reply. Docs. #148, #152.

2

motion to vacate, or, alternatively, for leave to file a surreply.  Doc. #156.

## II
## Federal Rule of Civil Procedure 59(e)

Under Fifth Circuit jurisprudence:

> A Rule 59(e) motion calls into question the correctness of a judgment. This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) serves the narrow purposes of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgement after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (cleaned up).  "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003)).  A Rule 59(e) motion should not be granted unless: "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 696–97 (5th Cir. 2003).

## III
## Analysis

Hill seeks to have this Court "[v]acate the Final Judgment … entered on June 30, 2025;" "[w]ithdraw the Memorandum Opinion and Order … granting summary judgment in favor of [LMPIC and LMIC];" "[r]eopen the case for full and fair adjudication on the merits;" and "[r]eopen discovery to allow for proper factual development and correction of the tainted record caused by prior counsel's ethical misconduct."  Doc. #144 at 3.  LMPIC and LMIC oppose Hill's

3

motion in full, and seek to have Hill's reply in support of her motion to vacate stricken, or, alternatively, to file a surreply.  Docs. #149, #156.

## A. Motion to Strike

As cause for striking Hill's reply in support of her motion to vacate, LMPIC and LMIC assert that in her reply, "Hill argues that the Court must vacate the entry of summary judgment so that a jury can decide fact questions about Winters' liability and allocation of fault for Hill's injuries under Miss. Code Ann. § 11-7-15;" "Hill did not present this argument in her initial Motion to Vacate … and supporting memorandum;" and "[c]onsequently, when [they] responded to Hill's Motion to Vacate, [they] did not have an opportunity to respond to this legal theory."  Doc. #156 at 1.

Hill responds that "[LMPIC and LMIC] cite no rule, statute, or authority authorizing the Court to strike a reply brief;" and "[her] Reply did not raise a new theory, but merely rebutted arguments raised in [LMPIC and LMIC's] opposition."[6]  Doc. #157 at 1.  As to her claim that her reply did not raise a new theory, Hill argues that "[i]n [their] response, [LMPIC and LMIC] argued that aggravated assault does not require specific intent and that a grand jury's refusal to indict does not alter the fact that … Winters was initially charged;" "[her] Reply rebutted that point by referencing Mississippi's comparative negligence statute, Miss. Code Ann. § 11-7-15, to demonstrate that allocation of fault is a quintessential jury function;" and "[t]he statute is directly germane to this discussion, because Mississippi plainly requires juries—not courts—to determine

---

[6] Hill notes that "[LMPIC and LMIC's] motion also fails to comply with Local Uniform Civil Rule 7(b)(4)."  Doc. #157 at 1.  However, LMPIC and LMIC's motion states that "[d]ue to the straightforward nature of the subject motion, [they] respectfully request that they be excused from filing a separate memorandum of authorities in support of this motions [sic]," which the Court is inclined to allow.  Doc. #156 at 2.  And while Hill asserts that "[she] cannot even discern from [LMPIC and LMIC's] bare motion the precise basis for striking the Reply," Doc. #158 at 3, the motion to strike provides that "the legal authorities in support of [it] are addressed in [LMPIC and LMIC's] proposed surreply, which is attached," Doc. #156 at 2.

and apportion fault."  Doc. #158 at 3–4.

LMPIC and LMIC reply that "Hill's new Reply argument was not raised in the original motion [to vacate];" and "[their] response did not open the door for the new Reply argument." Doc. #161 at 3.  Specifically, they argue that "[i]n their Response, [they] addressed and rebutted Hill's specific criminal intent argument, both by quoting from [the] Mississippi Court of Appeals opinion [in *Bright v. State*] and by relying on the plain language of the policies;" "Hill's Reply does not distinguish *Bright* and did not address the language of the policies;" "[i]nstead, the reply argues that civil liability and allocation of fault under Miss. Code Ann. § 11-7-15 are questions for a jury to decide;" and "[t]his new argument shifts from the legal framework of criminal law to a completely different legal framework involving civil tort liability and comparative fault."  *Id.* (emphasis in original).

"The federal courts are vested with the inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[,]' … includ[ing] the power of the court to control its docket."  *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)).  Here, it appears that the reply did raise a new argument not raised by LMPIC and LMIC in their response brief.  However, since the new argument consists of only a small portion of the reply, the Court will not strike the reply but will not consider Hill's argument based on Miss. Code Ann. § 11-7-15 in evaluating the motion to vacate.  *See Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) ("[T]he decision to allow a sur-reply lies within the district court's discretion. But when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence.") (internal citation omitted).  Because the Court declines to consider Hill's new

5

argument, no surreply is necessary; so, the motion to strike will be denied.

### B. Motion to Vacate Judgment

Hill argues "the Final Judgment … must be vacated under Rule 59(e) of the Federal Rules of Civil Procedure for three independently sufficient reasons: (1) newly discovered evidence; (2) manifest errors of law and fact; and (3) to prevent manifest injustice. Doc. #146 at 1. LMPIC and LMIC counter that "[r]elief under F.R.C.P. 59(e) is not warranted because Hill has not shown manifest injustice, newly discovered evidence, or manifest error of law or fact which would require the Court to vacate the entry of summary judgment in [their] favor." Doc. #149 at 1.

### 1. Newly discovered evidence

Hill first argues that "the October 14, 2024, Order dismissing criminal charges against … Winters … undermines the factual and legal basis for the Court's ruling." Doc. #146 at 6. Specifically, she contends that "[a] vacatur of the Opinion and Order granting summary judgment to [LMPIC and LMIC] is warranted" because "[i]n its … Opinion and Order, this Court concluded [that] '[b]ecause Winters was charged with the crime of aggravated assault based on him running over Hill with his truck at the casino, the criminal acts exclusion clause bars liability coverage;'" "[she] now submits newly discovered evidence—a certified copy of the October 14, 2024, Order of Dismissal of all criminal charges against … Winters arising from the November 8, 2022, incident;" "[t]he charges were presented to a grand jury, which returned a no true bill and declined to indict;" and "[t]his critical evidence undermines the core factual assertion upon which the Court relied to find that the criminal acts exclusion applied." *Id.* at 6–7 (quoting Doc. #136 at 9).

LMPIC and LMIC respond that "Hill readily admits that this 'new' evidence has existed since October 14, 2024;" "[w]hen the criminal charges were dismissed, the summary judgment briefing schedule was ongoing;" "[t]he dismissal order is a textbook example of evidence which

6

is not 'new evidence' under Rule 59;" and "Hill has no valid justification for failing to offer Winters' order of dismissal in opposition to summary judgment."[7]  Doc. #150 at 9.

Hill replies that "[t]he dismissal order did not exist at the time the response was due on October 4;" "[b]y the time it issued, the deadline had passed, and the Court later denied leave to refile out-of-time;" and "[she] had no procedural avenue to put [the] dismissal before the Court … mak[ing] it 'newly available evidence' under Rule 59(e)."  Doc. #155 at 2.

Under the Court's Local Rules, Hill's response and Winters' response to the September 20, 2024, summary judgment motions were due October 4, 2024.  *See* L.U. Civ. R. 7(b)(4) (setting fourteen-day response period).  Though the order of dismissal was not filed until October 14, and the Court denied Hill and Winters' October 23 motion for leave to refile their response and memorandum brief due to their failure to demonstrate excusable neglect—which motion did not mention the order of dismissal—Hill had ample opportunity to bring the order of dismissal to the Court's attention prior to the judgment.  All considered, the order of dismissal does not constitute newly discovered evidence since it was available eight months prior to the summary judgment ruling.[8]

### 2.  Manifest errors of law and fact

Next, Hill argues that "the judgment rests on manifest errors of law and fact, including misapplication of controlling precedent and improper factual inferences."  Doc. #146 at 6.  Specifically, Hill maintains that "[t]his Court's reliance on surveillance footage to conclude that

---

[7] LMPIC and LMIC also claim that "the entry of the order dismissing the criminal charges does not change the application of the criminal acts exclusion."  Doc. #150 at 10.  The Court agrees.

[8] Even if the Court found the order of dismal constituted newly discovered evidence, the summary judgment ruling would not change.  The Court's summary judgment ruling concluded that the criminal acts provision of the policy barred coverage.  *See* Doc. #136 at 9 ("The clear and unambiguous language of the Auto Policy's criminal acts provision specifies that the Auto Policy does not provide coverage for bodily injury arising out [of] a criminal act or omissions by Winters, *regardless* of whether he 'is actually charged, with or convicted of, a crime.'") (emphasis added) (quoting Doc. #93-11 at PageID 775).  The order of dismissal is irrelevant to the coverage determination.

… Winters acted with criminal intent constitutes a manifest error of fact requiring reconsideration;" "[i]n its Opinion and Order, the Court held [that] '[b]ecause Winters was charged with the crime of aggravated assault based on him running over Hill with his truck at the casino, the criminal acts exclusion clause bars liability coverage,' … reason[ing] that 'the incident cannot be deemed an accident for purposes of the intentional acts exclusion clause,' even though … Winters denied any intent to injure … Hill;" and "[t]hat conclusion rests on an interpretation of the surveillance footage that is both factually and legally flawed" because "[the surveillance footage] does not, standing alone, establish intent as a matter of law." *Id.* at 10 (quoting Doc. #136 at 9, 11).

In response, LMPIC and LMIC state that "[t]he Court's citation to events shown in the casino video did not violate the Fifth Circuit's holding of *Crane v. City of Arlington*;" "[t]he Court's Opinion and Order cite[s] to *Crane* and note[s] that 'the video evidence here generally does not contradict Winters' and Hill's accounts of the incident' [and t]his shows that the Court followed the holding of *Crane* and did not deviate from the traditional summary judgment standard;" and "the holding of *Crane* does not compel the Court to accept the subjective and self-serving testimony of Hill and Winters which the video does not support." Doc. #150 at 14 (citing No. 21-10644, 2022 WL 4592035 (5th Cir. Sep. 30, 2022)), and quoting Doc. #136 at 6 n. 6).

Hill replies that "[t]he grand jury … returned a no-bill [and t]hat outcome confirms what *Crane* presumes: reasonable factfinders can differ on what the video shows and what Winters intended;" and "[b]ecause the video does not clearly contradict sworn testimony, the issue of Winters's intent must be decided by a jury." Doc. #155 at 4.

In the summary judgment order, the Court only mentions the surveillance footage to explain the factual background of the case. In concluding that the intentional acts exclusion of the

policy barred coverage, the Court relied on Winters' deposition testimony, which is exactly what Hill now requests. *See* Doc. #136 at 11 ("[B]ecause Winters intended to operate his truck while aware Hill was very close to it soon after arguing with Hill during which he shoved her to the floor—regardless of whether he intended to cause Hill's injuries—the incident cannot be deemed an accident for purposes of the intentional acts exclusion clause."); *see id.* at 11 n.12 (quoting Winters' deposition testimony in which he states he reversed the truck once he believed Hill had ample time to move). In short, Hill fails to demonstrate manifest error in the Court's judgment.

### 3. Manifest injustice

Finally, Hill argues that "prior counsel's dual representation of directly adverse parties denied [her] a right to a fair, adversarial proceeding." Doc. #146 at 6. Specifically, Hill asserts that "[t]his case exemplifies a complete breakdown of the adversarial process … by the gross ethical misconduct and fiduciary breach of … Harris-Turner;" she was "deprived … of … competent, conflict-free representation and a fair opportunity to be heard;" Harris-Turner "directly violated Mississippi Rule of Professional Conduct 1.7(a), which prohibits concurrent representation of clients with directly adverse interests;" Harris-Turner "also violated Rules 1.5 and 1.8(f) by entangling conflicting fee structures and creating financial dependencies between the clients without informed consent" through a "deliberate exploitation of contingency fee structures for personal gain;" "Harris-Turner subordinated her duty of loyalty to each client in favor of financial convenience and expedience;" and "[t]he damage to [her] was immediate and lasting."[9]

---

[9] Hill contends that Harris-Turner "never filed a personal injury suit on [her] behalf;" "never advised [her] of her right to sue … Winters;" "never conducted a proper conflict check, never obtained written informed consent, and never filed a motion to stay the declaratory action despite Winters' pending criminal charges." Doc. #146 at 14–15. Hill further states that "[Harris-Turner's] litigation conduct was equally deficient" as "[s]he deposed Liberty Mutual adjusters on immaterial topics, pursued speculative bad faith theories without a ripe claim, and failed to depose critical fact witnesses;" "[s]he failed to respond to Requests for Admission, allowing them to be deemed admitted;" "[t]he lone counterclaim she filed … was dismissed and never refiled;" and "[s]he submitted a noncompliant response [to the summary judgment motions, which] was struck." *Id.* at 15.

*Id.* at 13, 14.

In response, LMPIC and LMIC assert that "the Fifth Circuit [has] considered and rejected a similar argument, holding that prior counsel's failure to oppose summary judgment was not manifest error, even when this failure included the failure to present 'critical' facts that allegedly could have resulted in the denial of summary judgment;" and "[a]s a pro se party, Hill was also required to ensure that all material facts and legal arguments had been raised in opposition before the Court decided the pending dispositive motions." Doc. #150 at 7 (quoting *Templet*, 367 F.3d at 479–80). They further argue that "Hill's allegations against her counsel are not new facts, as counsel's dual representation of Hill and Winters was already known to Hill and occurred before the Court entered summary judgment;" and "this allegedly new evidence is not relevant to the merits of the Court's [summary judgment] ruling." *Id.* at 15.

Hill replies that "[i]n *Templet*, counsel failed to file a procedurally adequate response to summary judgment and neglected to introduce 'critical' … evidence into the record;" "[her] counsel did more than mishandle filings—she simultaneously represented directly adverse parties in violation of Rule 1.7, conducted almost zero meaningful discovery, filed a stricken opposition to summary judgment and never corrected it, and then withdrew once the conflict surfaced;" and "[t]he consequence was a proceeding without adversarial balance or meaningful process." Doc. #155 at 4–5 (citing 367 F.3d at 478–79).

Hill's arguments regarding previous counsel's dual representation are unavailing. "[Hill] cannot 'avoid the consequences of the acts or omissions' of [her] attorney, who was '[her] freely selected agent.'" *In re Vioxx Prods. Liab. Litig.*, 509 F. App'x 383, 386–87 (5th Cir. 2013) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). The alleged ethical violations do not raise new evidence because they were known to Hill prior to the Court's summary judgment

10

order, and the alleged violations do not constitute a manifest injustice under Fifth Circuit law. *See Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288–89 (5th Cir. 1985) ("Were [the c]ourt to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney … meaningful finality of judgment would largely disappear.").

### 4.  Summary

Because Hill has not clearly established either a manifest error of law or fact, or presented newly discovered evidence, the Court declines to vacate the final judgment.

### C.  Other Relief

In addition to vacatur of the judgment, Hill requests that the Court "[w]ithdraw the Memorandum Opinion and Order … granting summary judgment in favor of [LMPIC and LMIC];" "[r]eopen the case for full and fair adjudication on the merits;" and "[r]eopen discovery to allow for proper factual development and correction of the tainted record caused by [her] prior counsel's ethical misconduct." Doc. #144 at 3. LMPIC and LMIC respond that "[t]he Court's Opinion and Order are not in conflict with controlling legal precedent and the grant of summary judgment is not based on manifest error of law or fact;" and "Hill has not demonstrated good cause to re-open discovery." Doc. #149 at 1. Because the Court will deny Hill's request to vacate the judgment, the additional relief sought by Hill will also be denied.

### III
### Conclusion

The motion to vacate [144] is **DENIED**. The motion to strike or to file a surreply [156] is **DENIED**.

**SO ORDERED**, this 31st day of March, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**